**CH2M HILL CENTRAL, INC.,**
**Plaintiff–Appellee,**

v.

**MADISON–MADISON INTERNATION-AL, INC., Defendant–Appellant.**

**No. 88–2216.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 15, 1989.

Decided June 9, 1989.

---

Samuel Johnson, Mulcahy & Wherry S.C., Milwaukee, WI., for defendant-appellant.

Pamela Schaefer and Kevin Lyons, Cook & Franke S.C., Milwaukee, WI., for plaintiff-appellee.

Before COFFEY, EASTERBROOK and RIPPLE, Circuit Judges.

COFFEY, Circuit Judge.

The plaintiff-appellee CH2M Hill Central, Inc. (CH2M Hill) filed this suit invoking the district court's diversity jurisdiction and seeking indemnification of $31,316.46 from its subcontractor, Madison–Madison International, Inc. (MMI), the defendant-appellant. The district court granted summary judgment in favor of CH2M Hill, and MMI appeals. We affirm.

Sometime prior to July 1979 the plaintiff-appellee CH2M Hill, an Oregon engineering firm, contracted with the Milwaukee Metropolitan Sewerage District to perform certain design and construction management work in the Milwaukee Water Pollution Abatement Program. The Pollution Abatement Program is partially funded through the Environmental Protection Agency (EPA), and contractors performing work on EPA projects are required to maintain records "directly pertinent to performance on EPA grant work ... in accordance with generally accepted accounting principles and practices...." 40 C.F.R. § 33.1030(b)(9). The contract between CH2M Hill and the Sewerage District provided:

> "The ENGINEER [CH2M Hill] will indemnify the DISTRICT against any unrecoverable loss due to grant disallowance because of any adjustment in charges for services of the ENGINEER or its subcontractors based on the determination in an audit by an appropriate agency that adequate administrative accounting or related procedures were not in place."

On July 12, 1979, CH2M Hill and the defendant-appellant MMI entered into a contract with MMI agreeing to perform as a subconsultant on the Pollution Abatement Program. At that time, MMI was an Ohio corporation doing business in Ohio and a number of other states and consisted of but two shareholders—Julian Madison, an engineer, and Robert Madison, his brother, an architect. The MMI–CH2M Hill contract, as amended on July 11, 1983, required MMI's compliance with the EPA accounting regulations contained in 40 C.F.R. § 33.1030. It also provided as follows:

> "SUBCONSULTANT [MMI] hereby agrees to indemnify CH2M against any claims, damages, compensation, suits, actions and expenses, including without limitation attorneys' fees, arising out of or relating to any unrecoverable loss of the DISTRICT due to grant disallowance

because of any adjustment in charges for services of the SUBCONSULTANT, or its subcontractors if any, based on the determination in an audit by an appropriate agency that adequate administrative accounting or related procedures were not in place."

In a document captioned "Agreement and Plan of Reorganization," dated March 1, 1985, Robert and Julian Madison reorganized MMI "in a manner which would split off MMI's activities outside of the state of Ohio from its activities within the state of Ohio...." Robert Madison became the president and sole shareholder of MMI, the Ohio corporation,[1] and Julian Madison became the president of a number of new corporations (including one known as MMI of Wisconsin), in states other than Ohio. As part of the reorganization, Robert Madison (on behalf of the assignor MMI) and Julian Madison (on behalf of the assignee MMI of Wisconsin) executed a separate document captioned "Assignment." That document, also dated March 1, 1985 (effective "for all purposes as of September 30, 1984"), made reference to the Agreement and Plan of Reorganization and provided in relevant part:

"NOW, THEREFORE, in consideration of the recitals and the premises therein the parties hereto agree as follows:

1. Assignor does hereby sell, assign and transfer, to Assignee all of its rights, duties, and obligations in all of the contracts listed in EXHIBIT 'A' which is attached hereto and incorporated herein.

2. Assignee hereby accepts the assignment of all of the contracts listed in EXHIBIT 'A', and agrees to assume the performance of all of the Assignors [sic] duties and obligations under all such contracts assigned hereby, and further agrees to hold Assignor harmless from the performance or non performance by Assignee of those obligations and duties."[2]

In 1986 the public accounting firm of Touche Ross & Co. performed an audit of MMI's books and records to determine the allowability of costs MMI billed to CH2M Hill for subconsultant work MMI performed on the Pollution Abatement Program between August 1, 1979, and September 30, 1984.[3] Touche Ross issued an audit

1. Sometime after the reorganization, Robert Madison changed MMI's name to "Robert P. Madison International, Inc." However, the named defendant-appellant in this suit has at all times been MMI; therefore, we will refer to the defendant-appellant as such.

2. The appendices to both parties' briefs include a copy of the March 1, 1985, "Assignment." Madison Madison International Brief at App. 26, CH2M Hill Brief at App. 24. The "Exhibit A" referenced therein is not attached, nor does "Exhibit A" appear elsewhere in the record. The court clerk contacted counsel in an unsuccessful attempt to procure the missing document. "Exhibit A" is obviously relevant to this case and its absence has inconvenienced this court to no end and has occasioned unnecessary delay. (We also note that key passages of the highly relevant Agreement and Plan of Reorganization of MMI reprinted in CH2M Hill's Brief at App. 24 were illegible, another example of careless legal practice.)

Attorneys who fail to carry out their basic responsibility of including relevant material in a summary judgment record place their clients in grave peril of suffering an adverse summary judgment. As we warned in our recent decision in *Herman v. City of Chicago*, 870 F.2d 400, 404 (7th Cir.1989):

"A district court need not scour the record to make the case of a party who does nothing.... The materials [the plaintiff's attorney] now says the district court should have hunted up were not in the record then and are not there now. A lawyer has an ethical obligation, enforceable under Rule 11, not to seek summary judgment if the facts show that his client is not entitled to that relief, but courts will not discover that the movant slighted contrary information if opposing lawyers sit on their haunches; judges may let the adversary system take its course."

(Citations omitted). Because the parties have not disputed that the MMI–CH2M Hill contract is one of the contracts listed in "Exhibit A," we accept this concession as reflecting the parties' acknowledgment that MMI purported to assign its rights and obligations under the contract to MMI of Wisconsin. In order that we might properly inspect and analyze all the documents counsel refer to, we have a right to expect that these documents will be properly set forth in the record and, when reproduced in the parties' briefs, that they will be in legible form.

3. It is unclear from the record on review whether Touche Ross & Co. performed the MMI audit on behalf of the federal government, the Sewerage District or CH2M Hill.

report in the fall of 1986 detailing all of the costs MMI billed to CH2M Hill during the time period under audit. The report recommended that certain costs be disallowed and explained the basis for the disallowance.[4] The audit findings were forwarded to Robert Madison, who filed a letter response with CH2M Hill. In his response, Robert Madison stated that he concurred that certain claimed costs totalling $31,-316.46 were properly challenged for the reasons set forth in Touche Ross' audit report, but questioned other costs as having been improperly disallowed. On or about December 8, 1986, CH2M Hill, acting in compliance with the indemnification provision in its contract with the Sewerage District, sent the Sewerage District a check in the amount of $31,316.46, along with a letter stating that the check "represents the total of uncontested questioned costs identified in Touche Ross' audit of Madison–Madison International, Inc." On the same day, CH2M Hill made a written demand for $31,316.46 from MMI as reimbursement for MMI's disallowed costs, based on the indemnification provision in the MMI–CH2M Hill amended agreement. MMI contested CH2M Hill's demand and refused to make the payment.

CH2M Hill filed suit on May 6, 1987, demanding payment of the $31,316.46. MMI filed an answer raising the affirmative defense that it was not the proper defendant—that, as a result of MMI's "Agreement and Plan of Reorganization" and "Assignment" dated March 1, 1985, the liability sued upon was the responsibility of MMI of Wisconsin. CH2M Hill filed a motion for summary judgment, contending that MMI could not enter into an assignment without CH2M Hill's written consent, and no such writing existed.[5] CH2M Hill

also argued that "the [assignment] is dated March 1, 1985, and this could only affect contractual relationships between CH2M Hill and MMI *after* March 1, 1985. The audited costs claimed in this action arose prior to September 30, 1984, thus the attempted assignment could *not* have affected obligations which arose prior to March 1, 1985." (Emphasis in original). Though the district court acknowledged "some doubt as to ... whether the assignment was properly approved in writing by CH2M Hill," the court found that "these disputes do not require the denial of summary judgment because the assignment on March 1, 1985 occurred after the costs in question from August 1, 1979 to September 30, 1984 were incurred, and, therefore, the assignment is irrelevant to CH2M Hill's claim for disallowed costs." The district court granted summary judgment in favor of CH2M Hill.

■ The only issue on appeal is whether the district court committed error in finding that MMI's March 1, 1985, assignment failed to effectively relieve MMI of its obligation to indemnify CH2M Hill. Initially, MMI urges that MMI of Wisconsin was solely responsible since CH2M Hill's right of indemnification under the amended agreement did not accrue until it reimbursed the Sewerage District for MMI's disallowed costs on December 8, 1986, more than a year and a half after MMI assigned its rights and obligations to MMI of Wisconsin. Alternatively, MMI alleges the district court erred in ignoring a factual dispute as to whether CH2M Hill consented by its conduct to MMI's assignment to MMI of Wisconsin. MMI posits that such consent, if proven, would preclude CH2M

---

**4.** These costs were disallowed for various reasons, some because they exceeded the amounts claimed on employee expense reports and were inconsistent with employee time sheets and payroll records; some because they were unsupported by adequate documentation; and others (e.g., the cost of professional liability insurance, advertising, donations and finance charges) because federal regulations prohibit them from being claimed as expenses on federally funded projects.

**5.** CH2M Hill relied upon Article 5, paragraph I of the amended agreement, which provided in relevant part:
"The SUBCONSULTANT shall not sublet or assign any of the work covered by this AGREEMENT, except with the prior written approval of CH2M, and in strict compliance with the terms, provisions, and conditions of the AMENDED AGREEMENT."

Hill's recovery against MMI.[6]

■ On appeal of a district court's grant of a motion for summary judgment, this court must view the entire record in the light most favorable to the non-moving party, determine whether there is a genuine issue with regard to any material fact and decide whether the movant is entitled to judgment as a matter of law. *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir.1988).

■ We must determine whether MMI is legally obligated to indemnify CH2M Hill in light of its delegation of that duty to MMI of Wisconsin, and look to Wisconsin law for the answer.[7] We are distressed to discover that the parties in their appellate briefs, and the district court in its written decision, fail to cite any Wisconsin case law explaining the novation issue, i.e., whether, and under what circumstances, a party to a contractual agreement of this nature can avoid liability for the performance of its obligations thereunder.[8] As we discuss below, according to Wisconsin law the critical issue in this case is whether the record reveals any dispute regarding the existence of an agreement between CH2M Hill, MMI and MMI of Wisconsin effecting a novation, that is, a substitution of obligors under the CH2M Hill–MMI amended agreement and a discharge of MMI's contractual liability. The parties and the district court failed to address this issue. Instead, they discuss the different issues of whether CH2M Hill "consented" to MMI's assignment and when CH2M Hill's right of indemnification "accrued." As we explain, neither of those issues are dispositive of CH2M Hill's claim.

■ Turning to the relevant body of law, we begin with the fundamental principle that "the delegation of the performance of a contract does not, unless the obligee agrees otherwise, discharge the liability of the delegating obligor to the obligee for breach of contract." *Brooks v. Hayes*, 133 Wis.2d 228, 236, 395 N.W.2d 167 (1986) (footnote omitted). Thus, under Wisconsin law, MMI (the obligor) cannot avoid liability for performance of its duty to indemnify CH2M Hill (the obligee) for MMI's disallowed costs merely by delegating the duty to MMI of Wisconsin. Rather, according to *Brooks*, MMI can avoid its contractual liability to CH2M Hill only if CH2M Hill agreed to release MMI from liability for breach of contract.

■ An obligee releases an obligor from contractual liability through "novation." *Brooks v. Hayes*, 133 Wis.2d at 244–45, 395 N.W.2d 167.

> "The essentials of a novation are a mutual agreement between a debtor, his creditor, and a third person by which such third person agrees to be substituted for such debtor and the creditor assents thereto, extinguishing the obligation of such debtor to such creditor and creating [an obligation] of such third person to such creditor."

---

6. MMI made several other arguments in the district court that are not advanced on appeal, including a challenge to the audit standards Touche Ross employed in disallowing $31,-316.46 of MMI's claimed costs. It is well settled that issues not discussed in the parties' appellate briefs are waived. *See, e.g., Hunter v. Allis-Chalmers Corp.*, 797 F.2d 1417, 1430 (7th Cir. 1986). Therefore, we will accept as a verity that CH2M Hill is entitled to indemnification in the amount of $31,316.46. The only question before us is whether that liability is an obligation of MMI or its assignee.

7. The appellant's brief specifically states that Wisconsin substantive law applies, and the appellee, though it fails explicitly to address the issue, cites only Wisconsin substantive law. (As we go on to note, the parties have failed to cite the Wisconsin law relevant to the decisive issue

of novation). We have no reason to believe any other state's law applies. Where federal court jurisdiction is founded on diversity of citizenship, as here, the court must apply state substantive law. *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

8. Although none of the cases the parties refer to address the novation question, *United Contractors, Inc. v. Cantrall*, 42 Wis.2d 464, 167 N.W.2d 220 (1969), appears in the defendant/appellant's brief and makes passing reference to an obligor's ability to avoid its contractual obligations. However, the facts in *Cantrall* are unlike this case, as *Cantrall* involved the assignment of proceeds to a contract, rather than the delegation of a contractual duty. Furthermore, the court disposed of *Cantrall* based on its application of agency principles, which are not implicated in this case.

*Navine v. Peltier,* 48 Wis.2d 588, 592–93, 180 N.W.2d 613 (1970), quoting *T.W. Stevenson Co. v. Peterson,* 163 Wis. 258, 261, 157 N.W. 750 (1916). Black's Law Dictionary 959 (5th ed. 1979) defines a novation as:

"Substitution of a new contract, debt, or obligation for an existing one, between the same or different parties. The substitution by mutual agreement of one debtor for another or of one creditor for another, whereby the old debt is extinguished. The requisites of a novation are a previous valid obligation, an agreement of all the parties to a new contract, the extinguishment of the old obligation, and the validity of the new one."

*See also Brooks v. Hayes,* 133 Wis.2d at 244–45, 395 N.W.2d 167; Restatement (Second) of Contracts, § 280, comment d ("A simple novation involving a substitution of obligors results when an obligee promises the obligor that he will discharge the obligor's duty in consideration for a third person's promise to pay the obligee."). Based on the above principles, we analyze the record, viewing it in the light most favorable to MMI, to determine whether there is a genuine issue of material fact regarding the existence of a novation in this case.

MMI relies upon Robert Madison's affidavit, filed in the district court in opposition to CH2M's motion for summary judgment. Robert Madison's affidavit states in relevant part:

"CH2M Hill was fully aware of the reorganization of Madison–Madison International, Inc. and was fully cognizant of the fact that Julian Madison assumed all of the rights, duties and obligations under the contract from its inception back to 1979.

Mr. Henry F. Padgham, Program Director for CH2M Hill, was our contact person. He was aware of the circumstances, the separation and of the assignment of the contract. He accepted such assignment by corresponding directly with Julian [Madison] and his new corporation [MMI of Wisconsin] with regard to all work from the date of the reorganization. He also made payments to Julian and his new corporation.

From the time of the reorganization of Madison–Madison International, Inc. through the termination of Julian, CH2M Hill paid Julian in excess of one million dollars ($1,000,000) for services rendered.

\*　　\*　　\*　　\*　　\*　　\*

Henry F. Padgham, as Program Director for CH2M Hill, fully understood that he was in fact doing business with Julian Madison and not with me. He also fully understood that Julian had his own separate corporation, Madison–Madison International of Wisconsin and that they were the parties to whom he should seek all performance; to make all payments and to hold responsible for the entire contract from its inception. Henry was also fully cognizant of the fact that I have my own firm—Robert P. Madison International, Inc., and that I was separate and apart from my brother, Julian Madison and that I had none of the liability from the contract."

Robert Madison's affidavit is silent regarding the existence of a novation, i.e. whether MMI, CH2M Hill and MMI of Wisconsin agreed to a substitution of MMI of Wisconsin for MMI as the obligor under the contract, an extinguishment of the old obligation and the creation of a new one. Indeed, affidavits filed by Padgham and Vincent Dinan, another CH2M Hill employee, stated that payments were consistently rendered to "Madison–Madison International," rather than MMI of Wisconsin. At best, Robert Madison's affidavit alleges that CH2M Hill "consented" by its conduct to MMI's March 1, 1985, assignment. MMI contends that such proof is sufficient to relieve it of liability for performance of its contractual duty to indemnify CH2M Hill. We disagree.

In *Brooks v. Hayes,* the Wisconsin Supreme Court rejected a very similar argument, explaining that proof that an obligee consented to delegation of a contractual duty "does not release the obligor from liability for breach of contract. More than the obligee's consent to the delegation of performance is needed to release the obligor from liability for breach of contract."

*Brooks v. Hayes,* 133 Wis.2d at 244, 395 N.W.2d 167. The court elaborated:

"Hayes [the obligor] has confused delegation of the performance of an obligation with delegation of responsibility for the performance of an obligation. The rule for delegation of the performance of a contractual obligation is that the obligor may delegate a contractual duty without the obligee's consent unless the duty is 'personal.' The rule for delegation of responsibility is that if the obligor delegates the performance of an obligation, the obligor is not relieved of responsibility for fulfilling that obligation or of liability in the event of a breach. The obligor under the contract is treated as having rendered the performance even when an independent contractor has rendered it, and the obligor remains the party liable for that performance if the performance proves to be in breach of the contract [footnote omitted].

Where the obligee consents to the delegation, the consent itself does not release the obligor from liability for breach of contract. More than the obligee's consent to a delegation of performance is needed to release the obligor from liability for breach of contract. For the obligor to be released from liability, the obligee must agree to the release. If there is an agreement between the obligor, obligee and a third party by which the third party agrees to be substituted for the obligor and the obligee assents thereto, the obligor is released from liability and the third person takes the place of the obligor. Such an agreement is known as a novation. [footnote omitted]"

*Brooks v. Hayes,* 133 Wis.2d at 244, 395 N.W.2d 167. There is simply no evidence in this case that CH2M Hill ever agreed to release MMI from liability for performance of its contractual duty to indemnify CH2M Hill, and MMI's proof that CH2M Hill merely "consented" to MMI's assignment falls far short of establishing such an agreement. In fact, the record reflects that CH2M Hill has continued to render payment in checks made out to "MMI," rather than "MMI of Wisconsin," throughout the contract's term.

The parties also debate whether CH2M Hill's right of indemnification "accrued" before or after the March 1, 1985, assignment, based on *Chernin v. International Oil Co.,* 261 Wis. 543, 545, 53 N.W.2d 425 (1952). The district court was also persuaded that resolution of this issue was dispositive. The *Chernin* case, however, did not involve an obligor's attempt to delegate a duty of indemnification. That case neither holds nor implies that an obligor's liability for performance of a contractual duty is affected by the timing of the obligee's right to enforce the obligation. Indeed, determining when CH2M Hill's right of indemnification "accrued" begs the question presented in this case: To whom does CH2M Hill's right of action run, once it accrues? Under Wisconsin law, MMI undertook certain duties included in its amended agreement with CH2M Hill, is bound to perform those duties unless there was a novation, *Brooks v. Hayes,* 133 Wis.2d at 244, 395 N.W.2d 167, and there is no genuine dispute regarding the existence of a novation in this case.

The record reveals that MMI contracted to indemnify CH2M Hill for any disallowed costs MMI incurred while working on the Pollution Abatement Program. Furthermore, there is no genuine issue of material fact concerning the question of whether CH2M Hill ever agreed to release MMI from liability for performance of that obligation. Thus, for reasons different than those on which the district court relied, summary judgment was properly entered in favor of CH2M Hill.

The judgment of the district court is

AFFIRMED.