METHODIST MANOR OF WAUKESHA, INC., d/b/a Comstock Care Center and Maplewood Center, Plaintiff-Appellant,

v.

Evelyn MARTIN and Frederick L. Martin, Defendants-Respondents.

Court of Appeals

*No. 01–2877. Submitted on briefs March 28, 2002.—Decided April 23, 2002.*

2002 WI App 130

(Also reported in 647 N.W.2d 409.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Reginald Hislop, Jr.*, West Allis, and *Donal M. Demet* of *Demet & Demet, S.C.*, Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Emanuel V. Gumina* of *Gumina & Gumina,* Brookfield, and *Brian J. Henderson* of *Henderson & Levihn,* Milwaukee.

Before Fine, Schudson and Curley, JJ.

¶ 1. FINE, J. Methodist Manor of Waukesha, Inc., appeals from the trial court's order and judgment dismissing its amended complaint against Frederick L. Martin. Methodist Manor claims that Frederick Martin diverted from a joint bank account that he shared with his mother monies that she was obligated by law and contract to remit to Methodist Manor. We reverse.

## I.

██

¶ 2. Our review of the trial court's dismissal of Methodist Manor's amended complaint against Frederick Martin is *de novo* and we must accept as true the facts alleged in that complaint. *See Morgan v. Pennsylvania Gen. Ins. Co.,* 87 Wis. 2d 723, 731, 275 N.W.2d 660, 664 (1979); *Heinritz v. Lawrence Univ.,* 194 Wis. 2d 606, 610, 535 N.W.2d 81, 83 (Ct. App. 1995).

¶ 3. According to Methodist Manor's amended complaint, Evelyn Martin was admitted to a Methodist Manor skilled nursing facility, *see* Wis. Stat. § 49.43(11), on January 22, 1999, and lived there until August 5, 2000. She owes Methodist Manor some $8,000.

¶ 4. Methodist Manor claims that Frederick Martin, Evelyn Martin's adult son, is "her attorney-in-fact, and the joint holder" with her of a bank account, and is her "agent" in connection with money provided to him

709

for her care "by the Social Security Administration." It also alleges that he received on his mother's behalf "her monthly income from Social Security and other unknown sources" but did not use that money "for her care and residency" at Methodist Manor "as required by law and instead converted said funds or portions thereof for himself or others, thereby depriving [Methodist Manor] of the amounts due under" Methodist Manor's written agreement with Evelyn Martin. (Stray comma omitted.)

¶ 5. As noted, the trial court dismissed Methodist Manor's amended complaint against Frederick Martin. It ruled that the amended complaint did not state a claim against Frederick Martin because there was "no personal guaranty [by Frederick Martin], [and] there is no privity of contract" between him and Methodist Manor. We disagree.

## II.

■

¶ 6 WISCONSIN STAT. § 49.45(7)(a) (1999–2000) sets the personal liability of certain patients for care given to them by facilities such as Methodist Manor. It provides:

> A recipient who is a patient in a public medical institution or an accommodated person and has a monthly income exceeding the payment rates established under 42 USC 1382(e) may retain $45 unearned income or the amount of any pension paid under 38 USC 3203(f), whichever is greater, per month for personal needs. Except as provided in s. 49.455(4)(a), the recipient shall apply income in excess of $45 or the amount of any pension paid under 38 USC 3203(f),

whichever is greater, less any amount deducted under rules promulgated by the department, toward the cost of care in the facility.[1]

Additionally, Evelyn Martin's contract with Methodist Manor required that funds encompassed by § 49.45(7)(a) "be paid" to the facility "by the 15th of each month." The question presented by this appeal is whether a person who is not a patient or an "accommodated person" but who has control over funds belonging to the patient or accommodated person is liable to the nursing home facility for conversion if he or she diverts the funds for his or her own use. We answer this question "yes."

---

[1] As noted, Evelyn Martin entered Methodist Manor in January of 1999. At the time, Wis. Stat. § 49.45(7)(a) permitted patients to retain $40 or the pension paid under the referenced federal statute, 38 U.S.C. 3203(f). Effective July 1, 2001, § 49.45(7)(a) was amended to increase the retained amount to $45. 1999 Wis. Act 9, § 1418m. Other than this change, Wis. Stat. § 49.45(7)(a) was during Evelyn Martin's tenure at Methodist Manor as it is quoted in the main body of this opinion. The parties agree that Evelyn Martin is an "accommodated person" as that term is used in Wis. Stat. § 49.45(7)(a). See Wis. Stat. § 49.43(1e).

Apparently unbeknownst to the Wisconsin legislature, 38 U.S.C. § 3203(f) was renumbered as 38 U.S.C. § 5503(f) by both Pub. L. No. 102–40, § 402(a), 105 Stat. 187 (1991) and Pub. L. No. 102–83, § 5(b), 105 Stat. 378 (1991), and as 38 U.S.C. 5503(d) by Pub. L. No. 107–103, § 204(a)(2), 115 Stat. 976 (2001). The provision refers to veterans' pension benefits and is not implicated by this case. 42 U.S.C. § 1382(e) sets forth certain eligibility criteria and limitations, and is also not implicated by this case. Wisconsin Stat. § 49.455(4)(a) preserves for a spouse of an institutionalized person a portion of the institutionalized spouse's income. This provision is also not implicated by this case.

¶ 7. Although the precise issue presented by this appeal is a matter of first impression, both here and elsewhere, a person who diverts funds belonging to another person and owed by that other person to a third party is liable to the third party for conversion. Thus, in *Farm Credit Bank of St. Paul v. F&A Dairy*, 165 Wis. 2d 360, 371, 477 N.W.2d 357, 361 (Ct. App. 1991), we recognized that a complaint states a claim in conversion when it alleges that the plaintiff is "entitled to immediate possession" of a "chattel" over which the defendant had wrongfully retained dominion or control. *See also Production Credit Ass'n v. Equity Coop Livestock Sales Ass'n*, 82 Wis. 2d 5, 10, 261 N.W.2d 127, 129 (1978) ("An action for conversion is bottomed upon a tortious interference with possessory rights."). The thing that the defendant diverts to his or her own use need not, however, be a chattel; money may also be converted. *Regas v. Helios*, 176 Wis. 56, 59, 186 N.W. 165, 166 (1922).

¶ 8. As we have seen, not only does WIS. STAT. § 49.45(7)(a) require that Evelyn Martin, as the recipient of certain funds apply those funds "toward the cost" of her care in Methodist Manor's facility, but her contract with Methodist Manor also required that those funds "be paid" to the facility "by the 15th of each month." Thus, by the fifteenth of every month Methodist Manor became entitled to the immediate possession of the funds at issue. As recognized by *City of Sheboygan v. Finnegan*, 245 Wis. 349, 352, 13 N.W.2d 923, 924 (1944), "[a]n agent, who knows that his principal is not entitled to funds received by him for such principal from a third person, is under a duty to return them to the one rightfully entitled thereto." Applying this statement to the facts alleged in Methodist Manor's

712

amended complaint, Frederick Martin is Evelyn Martin's "agent," he received funds from the Social Security Administration for her, and Methodist Manor is the "one rightfully entitled" to those funds by virtue of § 49.45(7)(a) and Evelyn Martin's contract with it; Frederick Martin is thus "under a duty to" remit those funds to Methodist Manor.

■

¶ 9. In sum, taking the facts as alleged in Methodist Manor's amended complaint as true, Frederick Martin wrongfully diverted for his own use funds that he received for his mother's care.[2] Accordingly, Method-

---

[2] This distinguishes the present case from the general rule upon which Frederick Martin relies: that an agent is not liable to third persons for damages they sustain by the agent's breach of a duty to the principal. *See* RESTATEMENT (SECOND) OF AGENCY § 352 (1958) ("An agent is not liable for harm to a person other than his principal because of his failure adequately to perform his duties to his principal, unless physical harm results from reliance upon performance of the duties by the agent, or unless the agent has taken control of land or other tangible things."); *Greenberg v. Stewart Title Guar. Co.*, 171 Wis. 2d 485, 498, 492 N.W.2d 147, 153 (1992); *Krawczyk v. Bank of Sun Prairie*, 203 Wis. 2d 556, 567, 553 N.W.2d 299, 303 (Ct. App. 1996). Thus, an Illustration to § 352 cited by Frederick Martin notes: "A is given money by P and directed to pay it to T. A fails to pay the money to T. A is not thereby liable to T." RESTATEMENT (SECOND) OF AGENCY § 352 cmt. a., illus. 1 (1958). But Comment a. to § 352 recognizes: "If a person has a cause of action in tort against an agent who has not contracted with him and who holds nothing for him, it is because the agent has caused him harm by conduct which is tortious, and not because of the contractual obligations of the agent to the principal."

Thus, as we noted in the main body of the opinion, RESTATEMENT (SECOND) OF AGENCY § 349 (1958) recognizes the tort of conversion by an agent of a principal's property that

ist Manor's amended complaint stated claims for conversion. Additionally, it makes no difference whether Frederick Martin was acting in good faith. *Production Credit*, 82 Wis. 2d at 8, 261 N.W.2d at 128 (agent's "good faith and lack of knowledge" of a third party's right to a principal's property that the agent diverts "are not good defenses"); *see also* RESTATEMENT (SECOND) OF AGENCY § 349 (1958) (acting "reasonably, although mistakenly" is not a defense to conversion); *id.*, Reporter's Notes (person liable in conversion even though he or she "had no reason to know of the interests of the other"); *Schwartz v. Schwartz*, 365 N.Y.S.2d 589, 592 (Sup. Ct. App. Term 1975) (*per curiam*) ("[A]n agent is guilty of conversion although he acts in good faith for a principal who receives the benefit.").

*By the Court.*—Judgment and order reversed and cause remanded.

rightfully belongs to another. Here, Methodist Manor's amended complaint has alleged that Frederick Martin converted monies to which it had the statutory and contractual right of possession. This was sufficient to withstand Frederick Martin's motion to dismiss.