BREW CITY REDEVELOPMENT GROUP, LLC,
Plaintiff-Appellant,

v.

The FERCHILL GROUP, John T. Ferchill, Wispark,
LLC, Jerold P. Franke, Juneau Avenue Partners,
LLC, JTMK-Pabst, Ltd., Highland Best, LLC,
ABC Company, Inc., or Partnership, DEF
Company, Inc., and/or Partnership,
Defendants-Respondents.†

Court of Appeals

*No. 2004AP3238. Oral argument January 31, 2006.
—Decided February 14, 2006.*

2006 WI App 39

(Also reported in 714 N.W.2d 582.)

---

† Petition to review granted 5-9-06.

796

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *William M. Cannon* of *Cannon & Dunphy, S.C.*, of Brookfield. There was oral argument by *Sara E. Kaas* of *Cannon & Dunphy, S.C.*

On behalf of the defendants-respondents, the cause was submitted on the brief and oral argument of *Matthew W. O'Neill,* of *Friebert, Finerty & St. John, S.C.,* of Milwaukee.

Before Fine, Curley and Kessler, JJ.

¶ 1. FINE, J. Brew City Redevelopment Group, LLC, appeals, pursuant to our leave, the dismissal, with the limited right to re-plead, of its complaint against The Ferchill Group, John T. Ferchill, Wispark, LLC, Jerold P. Franke, Juneau Avenue Partners, LLC, JTMK-Pabst, Ltd., Highland Best, LLC, and various unknown entities. *See* WIS. STAT. RULE 807.12 (suing fictitious defendants). We affirm and reverse, as indicated below, and remand for further proceedings.

¶ 2. This case concerns the projected development of land in the City of Milwaukee that used to be owned by the Pabst Brewing Company. As with many attempted major developments of potentially very valuable urban land, especially those that come into court, this matter has been marked by ill-will. Yet, as we explain below, this is a fairly straightforward case, revolving around the material written agreements. We first set out the principles that govern our review of what the trial court did, and then, second, apply those principles to the parties' disputes.

## I.

¶ 3. As noted, this case comes to us from the trial court's dismissal of Brew City's complaint. Accordingly, our review is *de novo* and is limited to whether Brew City's complaint asserts claims for which it is entitled to relief. *See Methodist Manor of Waukesha, Inc. v. Martin,*

2002 WI App 130, ¶ 2, 255 Wis. 2d 707, 709, 647 N.W.2d 409, 410. For the purposes of this review, we accept as true the facts alleged in Brew City's complaint. *See ibid.* However, "mere conclusory assertions that echo legal or statutory standards are insufficient; a complaint's assertions must 'allege the ultimate facts' that support the plaintiff's claims." *Aon Risk Servs., Inc. v. Liebenstein,* 2006 WI App 4, ¶ 6, 289 Wis.2d 127, 143, 710 N.W.2d 175, 182 (Ct. App. 2005) (quoted source omitted). A complaint may be dismissed for failure to state a claim only if " 'it is quite clear that under no conditions can the plaintiff recover.' " *Morgan v. Pennsylvania Gen. Ins. Co.,* 87 Wis. 2d 723, 731, 275 N.W.2d 660, 664 (1979) (quoted source omitted). Where a party's claims rest on contract, we must apply the contract's language. *Cernohorsky v. Northern Liquid Gas Co.,* 268 Wis. 586, 593, 68 N.W.2d 429, 433 (1955) (Contract language that is not ambiguous must be enforced as it is written "even though the parties may have placed a different construction on it."); *see also Dykstra v. Arthur G. McKee & Co.,* 92 Wis. 2d 17, 38, 284 N.W.2d 692, 702–703 (Ct. App. 1979), *aff'd,* 100 Wis. 2d 120, 301 N.W.2d 201 (1981). We assess the claims asserted by Brew City's complaint against this background.

¶ 4. Brew City's complaint asserts nine claims, and we set them out in the order they appear in the complaint: (1) against Wispark for breach of contract; (2) against Wispark for breach of an "implied duty of good faith" (uppercasing omitted); (3) against Franke, Ferchill, and JTMK-Pabst for intentional interference with Brew City's contract with Wispark; (4) against Juneau Avenue Partners for "breach of fiduciary duty" (uppercasing omitted); (5) against Wispark for conversion; (6) against all the defendants for "injury to business" under Wis. Stat. § 134.01 (uppercasing omitted);

(7) against Franke, Ferchill, and JTMK-Pabst for conspiracy to intentionally interfere with Brew City's contract with Wispark; (8) against Wispark and Juneau Avenue Partners for conspiracy to convert property Brew City alleges belongs to it; and (9) against all the defendants for punitive damages. The trial court dismissed the First and Second Claims, granting Brew City leave to re-plead those claims against Juneau Avenue Partners, and it dismissed outright all the other claims.

## II.

¶ 5. By June 5, 2002, Brew City, an entity created by James Haertel, had the right to buy the Pabst property in Milwaukee. On that date, it assigned that right to Wispark, characterized in the complaint as "the real estate development subsidiary of Wisconsin Energy Corporation." Wispark is further described by the complaint as the "sole member" of Highland Best, a limited liability company.

¶ 6. The June 5th assignment to Wispark by Brew City of Brew City's right to buy the Pabst property was reified in a contract bearing that date and executed on behalf of Brew City by Haertel, described in the assignment contract as Brew City's president and chief executive officer, and, on behalf of Wispark, by Franke, described by the contract as Wispark's president. As material to this appeal, according to the June 5th assignment contract:

- Brew City was assigning to Wispark its contractual right to buy the Pabst property;

- Wispark "agrees that upon acquisition" of the Pabst property from Pabst, Wispark "shall convey to" Brew City, "or shall arrange for a direct conveyance from" Pabst "to" Brew City "of fee simple title to the

portions of the" Pabst property "known as Buildings
No. 27, 28 and 35." Brew City and Wispark "acknowl-
edge and agree that the development and use of"
buildings 27, 28, and 35 "shall be subject to mutually
agreeable restrictive covenants, which are in accor-
dance with master planning considerations for the"
Pabst property development;

- Wispark was to employ Haertel "as a consultant to"
 Wispark "on terms and conditions (including scope
 of work) mutually agreeable to the parties for two
 years after the acquisition of the" Pabst property,
 and Haertel was to be paid "a fee of $79,000 per
 year" (parenthetical in original);

- "Subject to the terms and conditions of the [June
 5th assignment] Agreement," Wispark "agrees to
 provide" Brew City "with up to ten percent of the
 environmental remediation credit that" Wispark
 "has received from" Pabst "to reimburse" Brew City
 "for its reasonable out-of-pocket costs associated
 with environmental remediation" of buildings No.
 27, 28, and 35. "Such reimbursement shall be made
 after" Wispark "has received such funds from" Pabst
 "and within twenty (20) days after" Brew City "has
 provided" Wispark "with documentation reasonably
 satisfactory to" Wispark "that" Brew City "has ex-
 pended or committed to expend funds equal to the
 claimed reimbursement" (parenthetical in original);

- "At the closing of the acquisition of the" Pabst
 property, Brew City "shall be entitled to receive all
 personal property located in buildings 27, 28 and
 35," except for fixtures and other property the June
 5th assignment contract characterizes, plus other
 personal property the June 5th assignment de-
 scribes; and

- "The parties [that is, Brew City and Wispark] ac-
 knowledge that it is" Wispark's "intent to create a
 new entity to own the" Pabst property. "Subject to
 compliance with the terms and conditions of this

804

Assignment, and further subject to closing the purchase of the" Pabst property, Brew City "shall be entitled to a five percent ownership interest in such entity."

Significantly, as we will see later, Brew City did not agree in the June 5th assignment contract that Wispark's obligations to Brew City under the contract could be transferred to that "new entity" so as to result in a novation. *See Brooks v. Hayes*, 133 Wis. 2d 228, 244–245, 395 N.W.2d 167, 173–174 (1986) (Unless the obligee agrees to the release, "if the obligor delegates the performance of an obligation, the obligor is not relieved of responsibility for fulfilling that obligation or of liability in the event of a breach."). Rather, the clause envisioning Wispark's transfer of its right to buy the Pabst property to the "new entity" was specifically made subject to the other "terms and conditions" in the June 5th assignment contract.

¶ 7. Juneau Avenue Partners is the "entity" referred to in the June 5th assignment contract that was created to own the Pabst property. It was, according to Brew City's complaint, "created" on September 6, 2002, and, on the complaint's "information and belief," is "a joint venture" of JTMK-Pabst and Highland Best. JTMK-Pabst is described as "an affiliate of The Ferchill Group," and Highland Best is described as "an affiliate of" Wispark, which, as noted, earlier, is alleged to be Highland Best's sole member. According to Brew City's complaint, at a September 10, 2002, closing, Juneau Avenue Partners purchased from Pabst the property subject to Wispark's June 5th assignment contract with Brew City. We now turn to the complaint's allegations to determine whether they state claims for relief.

A. *First Claim: Breach of Contract, Against Wispark.*

¶ 8. As we have seen, Wispark agreed in the June 5, 2002, assignment contract to: (1) either give to Brew City or arrange for Brew City to receive buildings 27, 28, and 35, "upon acquisition" of the Pabst property from Pabst, and work with Brew City to ensure that appropriate restrictive covenants relating to those buildings were drawn up; (2) hire Haertel as a consultant; (3) give to Brew City an environmental remediation-credit in connection with buildings 27, 28, and 35; and (4) give to Brew City certain described personal property.

¶ 9. Brew City's First Claim asserts that Wispark breached the June 5th assignment contract and that Brew City was damaged as a result because: "title to buildings 27, 28 and 35" was not conveyed to Brew City "in a timely manner"; Wispark did not "in a timely manner, or at any time," "draft reasonable 'mutually agreeable restrictive covenants' for the development and use of the Brew City properties"; Wispark did not "honor Brew City's request for reimbursement" of remediation costs; the value of what the June 5th assignment contract promised would be Brew City's five percent interest in Juneau Avenue Partners was significantly watered-down; and Haertel was not paid his "consulting salary on a timely basis."[1]

█

¶ 10. The trial court held that Juneau Avenue Partners, not Wispark, was the proper party against whom the First Claim should have been asserted be-

---

[1] The parties agreed at oral argument that the claim in connection with Haertel's consulting contract has been resolved.

cause, in essence, Juneau Avenue Partners, not Wispark, owned the Pabst property. We disagree.

¶ 11. A complaint states a claim for breach of contract when it alleges: (1) a contract between the plaintiff and the defendant that creates obligations flowing from the defendant to the plaintiff; (2) failure of the defendant to do what it undertook to do; and (3) damages. *See Northwestern Motor Car, Inc. v. Pope,* 51 Wis. 2d 292, 296, 187 N.W.2d 200, 203 (1971) (approving trial court's formulation). Brew City's complaint asserts a breach-of-contract claim against Wispark:

- *Wispark* promised in the June 5th assignment contract with Brew City that when the Pabst property was acquired from Pabst, Wispark would either convey or arrange for the conveyance of buildings 27, 28, and 35 to Brew City. According to Brew City's complaint, Wispark did not do that.

- *Wispark* promised in the June 5th assignment contract with Brew City that it would employ Haertel as a paid consultant. Brew City's complaint alleges that although Haertel received "[m]onthly consulting payments" under a consulting agreement that was not signed because Brew City had objections to the proffered draft, the monies "were not timely paid."

- *Wispark* promised in the June 5th assignment contract with Brew City to make the environmental remediation payments to Haertel in connection with his development of buildings 27, 28, and 35. Brew City's complaint alleges that this was not done.

- *Wispark* promised in the June 5th assignment contract with Brew City that Brew City would get specified items of personal property from the Pabst property, and that this would occur at the closing on the Pabst property. A fair inference from Brew City's complaint is that this has not happened.

807

- *Wispark* promised in the June 5th assignment contract with Brew City that Brew City "shall be entitled to a five percent ownership interest in" what was formed as Juneau Avenue Partners.

Although according to Brew City's complaint, Wispark, as envisioned by the June 5th assignment contract with Brew City, could transfer to Juneau Avenue Partners the rights Wispark got under that assignment contract, Wispark's obligations to Brew City under the June 5th assignment contract could not, without Brew City's consent, be transferred to Juneau Avenue Partners or any other entity so as to relieve Wispark of its responsibility for these contractual obligations. *Brooks* states the rule, which we reprint at length because the parties do not discuss it in their briefs, although we raised the matter at oral argument:

> The rule for delegation of the performance of a contractual obligation is that the obligor may delegate a contractual duty without the obligee's consent unless the duty is "personal." The rule for delegation of responsibility is that if the obligor delegates the performance of an obligation, *the obligor is not relieved of responsibility for fulfilling that obligation or of liability in the event of a breach.* The obligor under the contract is treated as having rendered the performance even when an independent contractor has rendered it, and the obligor remains the party liable for that performance if the performance proves to be in breach of the contract.
>
> Where the obligee consents to the delegation, *the consent itself does not release the obligor from liability for breach of contract.* More than the obligee's consent to a delegation of performance is needed to release the obligor from liability for breach of contract. *For the obligor to be released from liability, the obligee must agree to the release.* If there is an agreement between the obligor, obligee and a third party by which the third

808

party agrees to be substituted for the obligor and the obligee assents thereto, the obligor is released from liability and the third person takes the place of the obligor. Such an agreement is known as a novation.

*Id.*, 133 Wis. 2d at 244–245, 395 N.W.2d at 173–174 (emphasis added; footnotes omitted); *see also CH2M Hill Cent., Inc. v. Madison-Madison Int'l, Inc.*, 895 F.2d 286, 290–292 (7th Cir. 1989) (applying Wisconsin law). Nothing in the Record reflects any agreement or consent by Brew City to relieve Wispark of its obligations under that contract. Thus, contrary to the defendants' contention and the trial court's ruling, Wispark's transfer to Juneau Avenue Partners of Wispark's interests under the June 5th assignment contract did not relieve Wispark of, as phrased by *Brooks*, its "responsibility for fulfilling" its contractual obligations to Brew City. Accordingly, Brew City's complaint states a breach-of-contract claim against Wispark.[2] We reverse the trial court's dismissal of Brew City's First Claim for relief.

---

[2] Thus, we need not analyze Brew City's contention that the agreement in the June 5th assignment contract that Wispark "may assign its rights under this Assignment to a new entity that is formed for the purpose of purchasing and/or developing the Property, provided [Brew City] receives its 5% equity interest therein" made receipt by Brew City of its five-percent interest a condition precedent to the transfer of the Pabst property by Wispark to that entity, Juneau Avenue Partners. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed). As we point out in the main body of this opinion, Wispark's transfer of the Pabst property to Juneau Avenue Partners did not relieve Wispark of its obligations under the June 5th assignment contract, and what the defendants claim is a contrary concession in Brew City's appellate brief does not bind our analysis. *See Fletcher v. Eagle River Mem'l Hosp., Inc.*, 156 Wis. 2d 165, 178–180, 456 N.W.2d 788, 794–795 (1990) (party's concession on legal issue not binding on court); *Saenz v. Murphy*, 162 Wis. 2d 54, 57 n.2, 469 N.W.2d

B. *Second Claim: Breach of Implied Duty of Good Faith, Against Wispark.*

¶ 12. "Every contract implies good faith and fair dealing between the parties to it," and mere compliance with the form but not the substance of a contract breaches that covenant of good faith. *Bozzacchi v. O'Malley*, 211 Wis. 2d 622, 626, 566 N.W.2d 494, 495 (Ct. App. 1997) (internal quotation marks omitted). As we have seen, the trial court held that Juneau Avenue Partners was the proper party against which Brew City could seek to enforce Wispark's obligations to Brew City under the June 5th assignment contract. The defendants make no separate argument in connection with Brew City's claim against Wispark for Wispark's asserted breach of its duty to act in good faith under that contract, and, on our independent review of Brew City's complaint, and based on what we have already set out in Part II.A. of this opinion, it is clear that Brew City's complaint states a claim against Wispark for Wispark's alleged breach of its duty to act under that contract in good faith. We reverse the trial court's dismissal of Brew City's Second Claim for relief.

C. *Third Claim: Intentional Interference with Contractual Relationship, Against Jerold P. Franke, John T. Ferchill, and JTMK-Pabst, Ltd.*

¶ 13. "The elements of tortious interference with a contract are: (1) the plaintiff had a contract or

611, 612 n.2 (1991) (court not bound by the parties' framing of the issues), *overruled on other grounds by State ex rel. Anderson-El v. Cooke*, 2000 WI 40, 234 Wis. 2d 626, 610 N.W.2d 821.

prospective contractual relationship with a third party; (2) the defendant interfered with the relationship; (3) the interference was intentional; (4) a causal connection exists between the interference and the damages; and (5) the defendant was not justified or privileged to interfere." *Aon Risk Servs.*, 2006 WI App 4, ¶ 20, 289 Wis. 2d at 157, 710 N.W.2d at 189. Brew City's intentional-interference claim against Franke, Ferchill, and JTMK-Pabst asserts that they were aware of or should have been aware of Brew City's contract with Wispark and that they interfered with it:

- by not giving Brew City title to buildings 27, 28, and 35;

- by not "draft[ing] reasonable 'mutually agreeable restrictive covenants' " in connection with those buildings, so Brew City could develop them within the Pabst property complex;

- by not "honor[ing] Brew City's request for reimbursement" of its remediation expenses;

- by offering Brew City an ownership interest in Juneau Avenue Partners that Brew City contends did not comply with the intent of the June 5th assignment contract;

- by not paying "Haertel's consulting salary on a timely basis";[3]

- by not "perform[ing] in accordance" with the time-is-of-the essence clause in the June 5th assignment contract;

- "by intentionally delaying performance of the terms of the June 2 [*sic*], 2002 Assignment [in order] to delay and avoid transfer of title of Brew City's

---

[3] As noted in footnote one, this claim has been resolved.

811

buildings, and to minimize Brew City's ability to obtain or maintain tenants for its buildings, among other things, in an attempt to push Brew City to sell its entire interest in Juneau Avenue Partners"; and

- "in other respects."

As we have seen, Wispark ultimately transferred the Pabst property to Juneau Avenue Partners, and, other than Wispark's obligations under the June 5th assignment contract that we discussed in Parts II.A. and B. of this opinion, the only defendant other than Wispark that, according to the complaint, had the legal responsibility or authority to do any of the things about which Brew City complains in its Third Claim is Juneau Avenue Partners. Of Franke, Ferchill, and JTMK-Pabst, only JTMK-Pabst is alleged to be a member of Juneau Avenue Partners, described by the complaint as a limited liability company. Under WIS. STAT. §§ 183.0304 and 183.0305, neither members of a limited liability company nor its manager may be liable in tort, for their acts or conduct as a member or manager, to third persons, such as, here, Brew City.[4] Thus, JTMK-Pabst is not a proper party to Brew City's tortious-interference claim because no conduct other than as a

---

[4] WISCONSIN STAT. § 183.0304 provides:

**Liability of members to 3rd parties. (1)** The debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the limited liability company. Except as provided in ss. 183.0502 and 183.0608, a member or manager of a limited liability company is not personally liable for any debt, obligation or liability of the limited liability company, except that a member or manager may become personally liable by his or her acts or conduct other than as a member or manager.

**(2)** Notwithstanding sub. (1), nothing in this chapter shall preclude a court from ignoring the limited liability company entity under principles of common law of this state that are similar to

member or manager of Juneau Avenue Partners is alleged. Further, with respect to Franke and Ferchill, although Brew City's complaint alleges what on the surface appears to be rough treatment of Haertel, none of the allegations are tied directly, or even by reasonable inference, to the mechanisms (that is, what Franke and Ferchill did to interfere with Brew City's June 5th assignment contract with Wispark) that resulted in the grievances asserted in the Third Claim. As we have seen, "mere conclusory assertions that echo legal or statutory standards are insufficient; a complaint's assertions must 'allege the ultimate facts' that support the plaintiff's claims." *Aon Risk Servs.*, 2006 WI App 4, ¶ 6, 289 Wis. 2d at 143, 710 N.W.2d at 182 (quoted source omitted). The trial court dismissed the Third Claim with prejudice. Although we affirm the dismissal as to JTMK-Pabst, that dismissal is without prejudice if facts should develop that show any conduct by it other than as a member of Juneau Avenue Partners. We also modify the trial court's dismissal as to Franke and Ferchill to be without prejudice, and, on remand, Brew City shall be entitled to re-plead its intentional-interference claim against Franke and Ferchill, and, if appropriate, JTMK-Pabst.

those applicable to business corporations and shareholders in this state and under circumstances that are not inconsistent with the purposes of this chapter.

WISCONSIN STAT. § 183.0305 provides:

**Parties to actions.** A member of a limited liability company is not a proper party to a proceeding by or against a limited liability company, solely by reason of being a member of the limited liability company, except if any of the following situations exists:

(1) The object of the proceeding is to enforce a member's right against or liability to the limited liability company.

(2) The action is brought by the member under s. 183.1101.

D. *Fourth Claim: Breach of Implied Fiduciary Duty, Against Juneau Avenue Partners.*

¶ 14. Brew City bases this claim on its contention that it should have a five-percent interest in Juneau Avenue Partners, and thus, according to its briefs on appeal, Brew City was a joint-venturer with Juneau Avenue Partners. The complaint, however, indicates that, as of yet, Brew City is not a part of Juneau Avenue Partners, and thus, as of yet at least, Brew City is not in a joint venture with Juneau Avenue Partners. *See Edlebeck v. Hooten*, 20 Wis. 2d 83, 88, 121 N.W.2d 240, 243 (1963) ("Four requisites have generally been recognized by the courts to be essential to the existence of a joint adventure: (1) Contribution of money or services but not necessarily in equal proportion by each of the parties, (2) joint proprietorship and mutual control over the subject matter of the venture, (3) an agreement to share profits though not necessarily the losses, and (4) a contract express or implied establishing the relationship."). Whatever the reasons for Brew City not getting its five-percent interest in Juneau Avenue Partners, whether breach of the June 5th assignment contract by Wispark, or Juneau Avenue Partners's complicity in that breach, Brew City's interest is, as of now, inchoate and not sufficient to trigger a fiduciary duty owed to Brew City by Juneau Avenue Partners. *See Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 407 (7th Cir. 2000) ("Fiduciary duties arise only after a stockholder comes into actual possession of stock, regardless of how certain the stockholder's future ownership was when the challenged transaction took place."). Accordingly, we affirm the dismissal of Brew City's Fourth Claim.

814

### E. *Fifth Claim: Conversion, Against Wispark.*

¶ 15. Brew City contends that Wispark's failure to "deliver title to buildings 27, 28 and 35 to Brew City" was a conversion of its property. The trial court disagreed. So do we.

¶ 16. "The elements of tortious conversion comprise: (1) intentionally controlling/taking property belonging to another; (2) controlling/taking property without the owner's consent; and (3) those acts resulting in serious interference with the rights of the owner to possess the property." *Bruner v. Heritage Cos.*, 225 Wis. 2d 728, 736, 593 N.W.2d 814, 818 (Ct. App. 1999). Not effectuating delivery of the plaintiff's property to the plaintiff, as Brew City claims Wispark did, before the plaintiff owns the property is not a conversion. Brew City never owned buildings 27, 28, and 35—it had a right to purchase the Pabst property from Pabst, and, as we have seen, assigned that right to Wispark in return for Wispark's promises to do a number of things, including transferring buildings 27, 28, and 35 to Brew City. According to Brew City's complaint, Wispark did not do so. Brew City's remedy is breach of contract, not conversion.[5] Accordingly, we affirm the dismissal of Brew City's Fifth Claim.

---

[5] The parties discuss the application of the economic-loss doctrine, which is designed "to prevent a party to a contract from employing tort remedies to compensate the party for purely economic losses arising from the contract." *Grams v. Milk Prods., Inc.*, 2005 WI 112, ¶ 2, 283 Wis. 2d 511, 516, 699 N.W.2d 167, 169. Although generally applicable when a plaintiff seeks to recover damages suffered when a product does not perform as promised, *see id.*, 2005 WI 112, ¶¶ 2–3, 13, 283 Wis. 2d at 516, 699 N.W.2d at 169, 171; *Magestro v. North Star Envtl.Const.*, 2002 WI App

### F. Sixth Claim: Injury to Business, Against All of the Defendants.

¶ 17. Brew City contends that its complaint states a claim under Wɪs. Sᴛᴀᴛ. § 134.01 against all of the defendants. Section 134.01 provides:

> **Injury to business; restraint of will.** Any 2 or more persons who shall combine, associate, agree, mutually undertake or concert together for the purpose of willfully or maliciously injuring another in his or her reputation, trade, business or profession by any means whatever, or for the purpose of maliciously compelling another to do or perform any act against his or her will, or preventing or hindering another from doing or performing any lawful act shall be punished by imprisonment in the county jail not more than one year or by fine not exceeding $500.

Although phrased as a criminal statute, a party may bring a civil action under the section to recover damages caused by its violation. *See Gerol v. Arena*, 127 Wis. 2d 1, 10, 377 N.W.2d 618, 622 (Ct. App. 1985) (Section 134.01 codified the "common law concept" that "when two or more persons maliciously or willfully combine to

---

182, ¶ 6, 256 Wis. 2d 744, 749–750, 649 N.W.2d 722, 725, it also applies when a party seeks tort remedies for breaches of commercial real-estate contracts, *Van Lare v. Vogt, Inc.*, 2004 WI 110, ¶¶ 17–21, 274 Wis. 2d 631, 640–642, 683 N.W.2d 46, 51–52. We do not discuss the economic-loss doctrine in connection with the trial court's dismissal of the Fifth Claim because Brew City's complaint does not satisfy the requisites of a claim for conversion. *See Gross*, 227 Wis. at 300, 277 N.W. at 665 (only dispositive issue need be addressed); *State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514, 520 (Ct. App. 1989) (cases should be decided on the "narrowest possible ground").

injure another's reputation or occupation, a tort has been committed," and is "designed to protect individuals rather than the public as a whole."). More than mere injury or the alleged conspirators' intent to profit by their actions, however, must be alleged. *Maleki v. Fine-Lando Clinic Chartered, S.C.*, 162 Wis. 2d 73, 87 n.9, 469 N.W.2d 629, 635 n.9 (1991) ("The conspiracy cases are replete with statements pointing out that competition that incidentally harms another when the purpose is to improve one's competitive advantage does not run afoul of conspiracy laws if there is not a malicious motive."). Rather, the *sine qua non* of a claim under § 134.01 is "malice," which, under § 134.01, means " 'doing a harm malevolently for the sake of the harm as an end in itself, and not merely as a means to some further end legitimately desired [such as hurting someone else's business by competition].' " *Maleki*, 162 Wis. 2d at 87–88, 469 N.W.2d at 635 (brackets by *Maleki*; quoting and adopting interpretation of § 134.01's predecessor statute by *Aikens v. Wisconsin*, 195 U.S. 194, 203 (1904)). Moreover, all parties to the alleged conspiracy must act from § 134.01 "malice." *Maleki*, 162 Wis. 2d at 86, 469 N.W.2d at 634 ("malice . . . must be proved in respect to both parties to the conspiracy"). Although the acts underlying a § 134.01 claim must be pled with specificity, *Onderdonk v. Lamb*, 79 Wis. 2d 241, 248, 255 N.W.2d 507, 510 (1977), malice need only "be averred generally," Wis. Stat. Rule 802.03(2) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."). We look at Brew City's allegations in this light.

¶ 18. Brew City's complaint asserts that:

- the defendants "acted together for the common and agreed upon purpose of injuring Brew City's reputation and business";

- the defendants "acted maliciously and intentionally to injure Brew City's reputation and business"; and

- Brew City was damaged as a result.

Taken in conjunction with allegations that Franke and Ferchill had discussed "at several of the monthly or bi-weekly meetings of the Juneau Avenue Partners" whether Haertel has " 'suffered enough,' " and that at "several meetings, Franke or Ferchill concluded the meeting by stating, 'No, Haertel has not suffered enough,' " Brew City's Sixth Claim passes pleading muster under WIS. STAT. § 134.01.[6] The defendants contend, however, that the economic-loss doctrine bars Brew City's § 134.01 claim. We disagree.

¶ 19. As we have seen in footnote five, the economic-loss doctrine applies when a party seeks tort remedies for breaches of commercial real-estate contracts. *Van Lare v. Vogt, Inc.*, 2004 WI 110, ¶¶ 17–21, 274 Wis. 2d 631, 640–642, 683 N.W.2d 46, 51–52. But, significantly, *Van Lare* recognized "fraud" exceptions to application of the doctrine, *id.*, 2004 WI 110, ¶¶ 29–34, 274 Wis. 2d at 645–648, 683 N.W.2d at 53–54, as has *Kaloti Enterprises, Inc. v. Kellogg Sales Co.*, 2005 WI 111, ¶¶ 30–51, 283 Wis. 2d 555, 580–589, 699 N.W.2d

---

[6] We disagree with the trial court's determination that, for the purposes of the defendants' motion to dismiss Brew City's complaint, animus directed at Haertel did not encompass Brew City.

205, 216–221.[7] Indeed, the "fraud" exceptions to the economic-loss doctrine discussed in both *Van Lare* and *Kaloti Enterprises* are, in essence, based on a form of malevolent intent—intentional fraud upon an unsuspecting party—albeit not necessarily harming for the sake of the harm. *Van Lare*, 2004 WI 110, ¶¶ 32–33, 274 Wis. 2d at 646–647, 683 N.W.2d at 54; *Kaloti Enters.*, 2005 WI 111, ¶¶ 30–51, 283 Wis. 2d at 580–589, 699 N.W.2d at 216–221. *A fortiori*, WIS. STAT. § 134.01, which is directed at focused malevolence— harm for the sake of the harm—is not trumped by the economic-loss doctrine, because, as with the tort of intentional fraud-in-the-inducement discussed in *Kaloti Enterprises*, inflicting harm for the sake of harm is not something that the law would reasonably "expect to be addressed in contract terms." *See id.*, 2005 WI 111, ¶ 48, 283 Wis. 2d at 588, 699 N.W.2d at 220. Further, Brew City's contract was with Wispark—not the other defendants targeted by its § 134.01 claim. Thus, at least insofar as those other defendants are concerned, a § 134.01 claim "falls outside the contract" and, accordingly, "courts should be able to address a party's failure to act honestly with tort law, even if the parties are engaging in a commercial transaction." *See Kaloti Enters.*, 2005 WI 111, ¶ 47, 283 Wis. 2d at 587, 699 N.W.2d at 220 (fraud in the inducement). Although the defendants point to *Maleki*'s comment that "[i]f the promise created an enforceable contract, there would be no purpose in alleging conspiracy," *id.*, 162 Wis. 2d at 92,

---

[7] The precise limits of the fraud exceptions to the economic-loss doctrine are still, apparently in flux. *See Van Lare*, 2004 WI 110, ¶¶ 44–46, 47–53, 274 Wis. 2d at 651–652, 653–655, 683 N.W.2d at 56–57, 57–58 (concurring opinions by Justice Ann Walsh Bradley and, on behalf of himself and Justice Jon P. Wilcox, by Justice N. Patrick Crooks).

469 N.W.2d at 637, and, also, its observation that there would be no need to bring an action for conspiracy under § 134.01 if the plaintiff "had an enforceable contract," *id.*, 162 Wis. 2d at 94–95, 469 N.W.2d at 638, these comments not only appear to be limited to the plaintiff's pleading strategy in the context of that case, but also could hardly be considered an analysis of the application, *vel non,* of the economic-loss doctrine because that doctrine was not adopted in Wisconsin until *Sunnyslope Grading, Inc. v. Miller, Bradford & Risberg, Inc.,* 148 Wis. 2d 910, 437 N.W.2d 213 (1989), *see Van Lare,* 2004 WI 110, ¶ 17, 274 Wis. 2d at 640, 683 N.W.2d at 51. In light of the legislative command in § 134.01, and, in the absence of a better characterization, the malevolent-action exception to the economic-loss doctrine we perceive in *Van Lare,* we reverse the dismissal of Brew City's Sixth Claim, except insofar as it asserts claims against Highland Best and JTMK-Pabst for acts done as members or managers of Juneau Avenue Partners. *See* footnote 4 above; WIS. STAT. §§ 183.0304, 183.0305.

G. *Seventh Claim: Conspiracy to Intentionally Interfere with Contractual Relationship, Against Jerold P. Franke, John T. Ferchill, and JTMK-Pabst, Ltd.*

¶ 20. This is a recasting of what Brew City alleged as its Third Claim, and for the reasons set out in Part II.C. of this opinion we modify the trial court's dismissal of Brew City's Seventh Claim as to JTMK-Pabst, Franke, and Ferchill to be without prejudice in accordance with what we wrote in connection with Brew City's Third Claim.

*H. Eighth Claim: Conspiracy to Convert, Against Wispark and Juneau Avenue Partners.*

¶ 21. This is a recasting of what Brew City alleged as its Fifth Claim, with the addition of Juneau Avenue Partners as a party. For the reasons set out in Part II.E. of this opinion we affirm the trial court's dismissal of Brew City's Eighth Claim.

*I. Ninth Claim: Punitive Damages, Against All of the Defendants.*

¶ 22. With the exception of Brew City's Sixth Claim, and the leave to re-plead Brew City's Third and Seventh Claims, the only surviving Brew City claims are claims for breach of contract. Punitive damages "generally cannot be had in breach of contract claims." *Grams v. Milk Prods., Inc.*, 2005 WI 112, ¶ 14 n.4, 283 Wis. 2d 511, 520 n. 4, 699 N.W.2d 167, 171 n.4; *Chuck Wagon Catering, Inc. v. Raduege*, 88 Wis. 2d 740, 756, 277 N.W.2d 787, 794 (1979) (" 'Punitive damages are not allowed for a mere breach of contract.' ") (quoted source omitted). Punitive damages may, however, be awarded in the appropriate intentional-interference-with-a-contract case. *See Musa v. Jefferson County Bank*, 2001 WI 2, ¶¶ 5-6, 35, 240 Wis. 2d 327, 330–331, 342, 620 N.W.2d 797, 799, 804 (punitive damages allowed in tortious-interference-with-contractual-relations case where jury awarded plaintiff mental-health expenses as well). We thus vacate the trial court's dismissal of Brew City's Ninth Claim, the fate of which will be determined on remand in connection with the trial of Brew City's Sixth Claim, and in connection with the trial court's assessment of Brew City's amended Third and Seventh Claims, if it re-pleads.

### III.

¶ 23. In sum, we reverse the trial court's dismissal of Brew City's First, Second, and Sixth Claims, affirm but modify the trial court's dismissal of Brew City's Third and Seventh Claims, affirm the trial court's dismissal of Brew City's Fourth, Fifth, and Eighth Claims, and vacate the trial court's dismissal of Brew City's Ninth Claim, and we remand this matter to the trial court for further proceedings consistent with this opinion.

*By the Court.*—Orders affirmed in part; reversed in part and cause remanded for further proceedings.