BREW CITY REDEVELOPMENT GROUP, LLC,
Plaintiff-Appellant,

v.

The FERCHILL GROUP, John T. Ferchill, Wispark,
LLC, Jerold P. Franke, Juneau Avenue Partners,
LLC, JTMK-Pabst, Ltd., Highland Best, LLC,
ABC Company, Inc., or Partnership, and DEF
Company, Inc. or Partnership,
Defendants-Respondents-Petitioners.

Supreme Court

*No. 2004AP3238. Oral argument October 13, 2006.
—Decided December 13, 2006.*

2006 WI 128

(Also reported in 724 N.W.2d 879.)

606

For the defendants-respondents-petitioners there were briefs by *Matthew W. O'Neill* and *Friebert, Finerty & St. John, S.C.*, Milwaukee; *R. Ryan Stoll* and *Skadden, Arps, Slate, Meagher & Flom, LLP*, Chicago, IL, and oral argument by *Matthew W. O'Neill*.

For the plaintiff-appellant there was a brief by *William M. Cannon, Sarah F. Kaas, Brett A. Eckstein,* and *Cannon & Dunphy, S.C.*, Brookfield, and oral argument by *William M. Cannon*.

An amicus curiae brief was filed by *Joseph D. Kearney* and *Appellate Consulting Group*, Milwaukee, on behalf of Wisconsin Manufacturers and Commerce.

An amicus curiae brief was filed by *Debra P. Conrad* and *Thomas D. Larson,* Madison, on behalf of the Wisconsin Realtors Association.

An amicus curiae brief was filed by *William C. Gleisner, III* and the *Law Offices of William Gleisner,* Milwaukee; *E. Campion Kersten* and *Kersten & McKinnon, S.C.,* Milwaukee, on behalf of the Wisconsin Academy of Trial Lawyers.

An amicus curiae brief was filed by *Timothy M. Hansen* and *Michael Best & Friedrich LLP,* Milwaukee, on behalf of the National Association of Industrial and Office Properties, Wisconsin Chapter and the Wisconsin Builders Association.

¶ 1. ANN WALSH BRADLEY, J. This is a review of a published court of appeals decision affirming in part and reversing in part an order of the Circuit Court of Milwaukee County. That order dismissed, with limited right to replead, the complaint filed by Brew City Redevelopment Group, LLC, against the Ferchill Group, John T. Ferchill, Wispark, LLC, Jerold P. Franke, Juneau Avenue Partners, LLC, JTMK-Pabst, Ltd., Highland Best, LLC, and other unknown entities (collectively, "Ferchill Group").[1]

¶ 2. This case arises out of a dispute over the purchase and planned redevelopment of the property and buildings of a defunct brewery in downtown Milwaukee. Brew City alleges an array of contract and tort causes of action against various combinations of defendants. The circuit court dismissed all of the causes of action. The court of appeals reversed some of these

---

[1] *See Brew City Redevelopment Group, LLC v. The Ferchill Group,* 2006 WI App 39, 289 Wis. 2d 795, 714 N.W.2d 582 (affirming in part and reversing in part an order of the Circuit Court for Milwaukee County, Richard J. Sankovitz, Judge).

dismissals, modified others, and affirmed the remainder. Both tort and contract claims remain, and the interface between them occasions this review.

¶ 3. The Ferchill Group seeks review, contending (1) that Brew City's malicious injury to business claim under Wis. Stat. § 134.01 (2003–04)[2] is barred by the economic loss doctrine; (2) that Franke and Ferchill are immune from tortious interference with contract claims by virtue of being members or managers of limited liability companies (LLCs); and (3) that the intracorporate conspiracy doctrine bars Brew City's claims for conspiracy to tortiously interfere with contract and conspiracy to maliciously injure business.

¶ 4. We determine first that the economic loss doctrine does not apply to Brew City's malicious injury to business claim. Second, under the facts alleged in Brew City's complaint, Franke and Ferchill are not immune from liability under Wis. Stat. § 183.0304. Third, the intracorporate conspiracy doctrine does not bar Brew City's claims, as alleged, for conspiracy to maliciously injure business under Wis. Stat. § 134.01 and for conspiracy to tortiously interfere with contract. Although we apply a different rationale with respect to Brew City's § 134.01 claims, we affirm the court of appeals.

I

¶ 5. The facts set forth below come from the plaintiff's complaint. We reference additional facts from the complaint as needed in the discussion sections of this opinion.

---

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

¶ 6. The property that is the subject of this dispute is the site of the Pabst Brewing Company's downtown Milwaukee brewery, which Pabst closed in 1996. The complex consists of 27 buildings, most of which were built in the late nineteenth century. Brew City, whose president and CEO is James Haertel, acquired the right to purchase the property. On June 5, 2002, Brew City assigned that right to Wispark. According to Brew City's complaint, Jerold Franke is Wispark's president.

¶ 7. Haertel executed the June 5 assignment agreement on behalf of Brew City, and Franke executed the agreement on behalf of Wispark. Among the provisions of the agreement were the following:

- Brew City assigned to Wispark its contractual right to buy the Pabst property;

- Upon its acquisition of the property, Wispark was to convey to Brew City title to Buildings 27, 28, and 35 on the property;

- Brew City and Wispark agreed that the development of buildings 27, 28, and 35 would be subject to mutually agreeable restrictive covenants, and in accordance with master planning considerations for the property;

- Wispark was to employ Haertel as a consultant to Wispark for two years after Wispark acquired the property;

- Wispark was to provide Brew City with up to ten percent of the environmental remediation credit that Wispark would receive from Pabst as reimbursement for Brew City's environmental remediation of buildings 27, 28, and 35;

- Brew City acknowledged that Wispark intended to create a new entity to own the Pabst property;

- Brew City was to receive a five percent ownership in the new entity.

¶ 8. Juneau Avenue Partners ("Juneau") was created as the new entity to own the Pabst property. According to the complaint, Juneau is a joint venture between JTMK-Pabst and Highland Best. The complaint alleges that JTMK-Pabst is an affiliate of the Ferchill Group, and that Wispark is the sole member of Highland Best. It also states that John Ferchill is president and chief executive officer of the Ferchill Group, and a member of JTMK-Pabst. Brew City asserts that at a September 10, 2002, closing, Juneau purchased the property from Pabst.

¶ 9. After the closing, Brew City and Juneau were unable to agree on the restrictive covenants for buildings 27, 28, and 35, the easements for those buildings, and the nature of Brew City's five percent equity interest in Juneau. There were also disputes between the parties regarding the transfer of title to buildings 27, 28, and 35 to Brew City, payment of Haertel's consulting salary,[3] and payment of the environmental remediation credit.

¶ 10. Brew City filed this lawsuit, alleging the following nine claims for relief:

1. Against Wispark for breach of an "implied duty of good faith";

2. Against Wispark for breach of contract;

3. Against Franke, Ferchill, and JTMK-Pabst for intentional interference with Brew City's contract with Wispark;

4. Against Juneau for "breach of fiduciary duty";

5. Against Wispark for conversion;

---

[3] The record reflects that the parties have resolved the dispute regarding Haertel's consulting salary.

6. Against all the defendants for malicious "injury to business" under Wis. Stat. § 134.01;

7. Against Franke, Ferchill, and JTMK-Pabst for conspiracy to intentionally interfere with Brew City's contract with Wispark;

8. Against Wispark and Juneau Avenue Partners for conspiracy to convert Brew City's property; and

9. Against all the defendants for punitive damages.

¶ 11. The complaint also alleges a number of instances of "rough treatment" of Haertel and Brew City by Franke, Ferchill, and Juneau Avenue Partners. For example, it alleges that during a tour of the Pabst property with the Milwaukee mayor, Franke stated that "we're going to have Haertel so tied up with covenants and restrictions, that we will control those buildings as well." It also alleges that Ferchill berated Haertel at a meeting, that Wispark or Juneau changed the locks on buildings 27, 28, and 35 to prevent Brew City's access, and that Juneau interfered with Brew City's negotiations with a potential lessee. Further, Brew City alleges that at several of Juneau's meetings, Franke and Ferchill made comments regarding whether Haertel had "suffered enough" and concluded that "No, Haertel has not suffered enough."

¶ 12. The circuit court dismissed the first and second causes of action against Wispark for breach of contract and breach of duty of good faith, but granted leave for Brew City to file an amended complaint against Juneau for those causes of action. It dismissed all of the other claims with prejudice.

¶ 13. The court of appeals reversed the dismissals of counts one and two. Ferchill Group has not petitioned for review of that aspect of the court of appeals decision, and those contract claims are not before us.

¶ 14. The essential questions in this review concern whether Brew City can pursue three tort claims against the various individuals and entities involved in the sale of the property. The court of appeals reversed the dismissal of Brew City's sixth cause of action, a tort claim against all defendants for conspiracy to maliciously injure reputation and business under Wis. Stat. § 134.01, "except insofar as it asserts claims against Highland Best and JTMK-Pabst for acts done as members or managers of Juneau." *Brew City,* 289 Wis. 2d 795, ¶ 19. It affirmed the dismissal of two additional tort claims, Brew City's third claim for intentional interference with contract, and its seventh claim for conspiracy to intentionally interfere with contract. However, the dismissals were modified to be dismissals without prejudice. Ferchill Group seeks review of the court of appeals' actions as to these tort claims.[4]

II

¶ 15. This case comes to the court on review of a motion to dismiss. We address whether Brew City's complaint asserts claims upon which relief can be granted. Such an inquiry presents questions of law

---

[4] The court of appeals affirmed the dismissals of claims four (breach of implied fiduciary duty against Juneau), five (conversion against Wispark), and eight (conspiracy to convert against Wispark and Juneau) without modification. Brew City has not sought review of the court of appeals' decision to affirm those dismissals. The court of appeals vacated the trial court's dismissal of the ninth claim, for punitive damages, "the fate of which will be determined on remand in connection with the trial of [claims three, six, and seven]." *Brew City,* 289 Wis. 2d 795, ¶ 22. That part of the court of appeals decision is not under review.

subject to independent appellate review. *Walberg v. St. Francis Home, Inc.*, 2005 WI 64, ¶ 6, 281 Wis. 2d 99, 697 N.W.2d 36.

■■■

¶ 16. A reviewing court takes as true the facts alleged in the complaint. *Methodist Manor of Waukesha, Inc. v. Martin*, 2002 WI App 130, ¶ 2, 255 Wis. 2d 707, 647 N.W.2d 409. In determining whether a proper claim has been alleged, the complaint should be liberally construed. *Kaloti Enters., Inc. v. Kellogg Sales Co.*, 2005 WI 111, ¶ 11, 283 Wis. 2d 555, 699 N.W.2d 205. Dismissal is proper only if it is "quite clear" that there are no circumstances in which the plaintiff could recover. *Doe 67C v. Archdiocese of Milwaukee*, 2005 WI 123, ¶ 20, 284 Wis. 2d 307, 700 N.W.2d 180.

III

■■■

¶ 17. We turn first to Brew City's malicious injury to reputation and business claim under Wis. Stat. § 134.01. Ferchill Group argues that the economic loss doctrine bars recovery for this claim. The economic loss doctrine "is a judicial doctrine intended to preserve the fundamental distinction between contract and tort. It works to prevent a party to a contract from employing tort remedies to compensate the party for purely economic losses arising from the contract." *Grams v. Milk Prods., Inc.*, 2005 WI 112, ¶ 2, 283 Wis. 2d 511, 699 N.W.2d 167 (internal citation omitted). Ferchill Group asserts that the alleged actions upon which Brew City bases its claim all pertain to contract performance, and that the only damages Brew City seeks are for economic losses pertaining to breach of the June 5, 2002, assign-

ment agreement. Thus, it argues, Brew City's § 134.01 claim is barred by the economic loss doctrine. We disagree.

¶ 18. Assessing Ferchill Group's argument requires that we examine Brew City's pleading. Brew City captions its sixth claim for relief as: "Injury to Business: Wis. Stat. § 134.01." It asserts that the "[d]efendants acted maliciously and intentionally to injure Brew City's reputation and business."

¶ 19. Section 134.01 provides:

> **Injury to business; restraint of will**. Any 2 or more persons who shall combine, associate, agree, mutually undertake or concert together for the purpose of willfully or maliciously injuring another in his or her reputation, trade, business or profession by any means whatever, or for the purpose of maliciously compelling another to do or perform any act against his or her will, or preventing or hindering another from doing or performing any lawful act shall be punished by imprisonment in the county jail not more than one year or by fine not exceeding $500.

While § 134.01 is a criminal statute, it provides the basis for civil tort liability. *Radue v. Dill,* 74 Wis. 2d 239, 245, 246 N.W.2d 507 (1976).

¶ 20. The requirements to state a cause of action for civil conspiracy under § 134.01 were set out by this court in *Radue.* In that case, the plaintiff alleged that the defendants had combined to injure his business reputation by committing perjury. Though the only acts alleged in the complaint were giving false information, this court determined that the plaintiff was able to state a claim under § 134.01 based on those actions. *Id.* at 244. The court stated that if the defendants "conspired for one of the purposes proscribed by § 134.01 [i.e., 'maliciously injuring' the plaintiff] and thereby

caused damage to the plaintiff, they have committed a civil wrong for which the plaintiff may recover." *Id.* at 245.[5] Thus, the plaintiff's allegation that the defendants had "conspired 'for the purpose of willfully and maliciously injuring the plaintiff in his reputation, trade and profession,' " combined with the plaintiff's allegation that the conspiracy caused him injury, sufficed to state a claim. *Id.*

■

¶ 21. Brew City's statement of the cause of action asserts that the defendants "acted together for the common and agreed upon purpose of injuring Brew City's reputation and business," and "acted maliciously and intentionally to injure Brew City's reputation and business." It also incorporates by reference all of the factual allegations in the complaint as a whole. Finally, it asserts damages.

¶ 22. The circuit court determined that the economic loss doctrine bars recovery for Brew City's § 134.01 claim on the ground that the actions described in the complaint were indicative only of "a mean-spirited breach of contract." Further, it determined that

---

[5] In contrast to criminal law, where the "gist" of conspiracy is the agreement, the "gist" of a civil conspiracy action is the damages. "It is the established law of this state that there is no such thing as a civil action for conspiracy. There is an action for damages caused by acts pursuant to a conspiracy but none for the conspiracy alone. In a civil action for damages for an executed conspiracy, the gist of the action is the damages." *Singer v. Singer,* 245 Wis. 191, 195, 14 N.W.2d 43 (1944); *Onderdonk v. Lamb,* 79 Wis. 2d 241, 246, 255 N.W.2d 507 (1977); *Radue v. Dill,* 74 Wis. 2d 239, 244, 246 N.W.2d 507 (1976). Thus, while parties may incur criminal liability by conspiring to maliciously or willfully injure another's business reputation in violation of Wis. Stat. § 134.01, those parties will not be subject to civil liability absent damages.

the dispute was principally about Brew City's expectancy interests arising out of its bargained-for agreement, and that the economic loss doctrine therefore barred the claim.

¶ 23. The court of appeals reversed the circuit court's dismissal of Brew City's § 134.01 claim.[6] The crux of the court of appeals' decision regarding the § 134.01 claim is its recognition of a malevolent action exception to the economic loss doctrine. It based its decision on this court's opinion in *Kaloti,* which recognized a "fraud in the inducement" exception to the economic loss doctrine. *Kaloti,* 283 Wis. 2d 555, ¶ 51. The court of appeals reasoned that because the essence of intentional fraud is malevolent intent, the malicious intent required for § 134.01 claims[7] would suffice to keep such claims from being barred by the economic loss doctrine. *Brew City,* 289 Wis. 2d 795, ¶ 19. Thus, the court reasoned that because Brew City's complaint alleges that the defendants acted with malice, their actions fall within the scope of the malevolent action exception to the economic loss doctrine.

---

[6] As previously noted, the court of appeals did not reverse the dismissal of Brew City's § 134.01 claims against Highland Best and JTMK-Pabst for acts done as members or managers of Juneau. *Brew City,* 289 Wis. 2d 795, ¶ 19.

[7] In *Maleki v. Fine-Lando Clinic Chartered, S.C.,* 162 Wis. 2d 73, 469 N.W.2d 629 (1991), this court determined that under § 134.01 "malice" demands more than an intent to do harm. Rather, it requires an intent to do "wrongful" harm. Such harm does not include incidental harms that derive from a person's seeking competitive advantage. It requires inflicting a harm "for the sake of harm as an end in itself, and not merely as a means to some further end legitimately desired [such as hurting someone else's business by competition]." *Id.* at 87–88 (brackets in *Maleki,* quoting *Aikens v. Wisconsin,* 195 U.S. 194, 203 (1904)).

¶ 24. Ferchill Group argues that the circuit court's approach is correct, and that Brew City's § 134.01 claims are barred by the economic loss doctrine. As Ferchill Group explains, this court applied the economic loss doctrine to bar recovery in tort in the context of a commercial real estate transaction in *Van Lare v. Vogt, Inc.,* 2004 WI 110, 274 Wis. 2d 631, 683 N.W.2d 46.

¶ 25. However, the fact that the economic loss doctrine applies to commercial real estate agreements has no bearing on the pleadings in this case. Rather, the economic loss doctrine does not apply here. This is true for three reasons. First, § 134.01 claims do not depend on a contract in order to lie. Second, the allegations underlying Brew City's § 134.01 claim are different allegations than those underlying Brew City's breach of contract claims. Finally, the damages Brew City alleges under its breach of contract claims are different from the damages it alleges under the malicious injury claim.

¶ 26. In *Van Lare,* this court determined that the economic loss doctrine may bar recovery in tort for strict liability misrepresentation claims in commercial real estate contracts. 274 Wis. 2d 631, ¶ 28. However, in contrast to Brew City's malicious injury to business claim, the strict liability misrepresentation claim in *Van Lare* was premised on the existence of a contract in the first place. The malicious injury to reputation and business claim in this case could have occurred regardless of whether the June 5 assignment agreement ever existed. We see no reason why the economic loss doctrine should apply to, or bar recovery for, a claim that does not depend on a contract in order to lie.

¶ 27. The second reason that the economic loss doctrine does not apply here is that the actions that

constitute Brew City's § 134.01 claim are different actions than those that constitute Brew City's breach of contract claims. There are several principal allegations that support the malicious injury to reputation and business claim.

¶ 28. Brew City alleges that Franke boasted in front of Milwaukee's mayor that "[w]e're going to have Haertel so tied up with covenants and restrictions, that we will control [Haertel's] buildings as well." It also alleges that Juneau contacted one of Brew City's potential lessees against Brew City's wishes. Though that potential lessee had given Brew City a letter stating its intent to become a tenant in one of Brew City's buildings, Brew City alleges that the potential lessee slowed its approach to leasing after being contacted by Juneau.

¶ 29. Next, Brew City alleges that at a meeting regarding the redevelopment project with others present, "Ferchill verbally berated Mr. Haertel, directed profanities towards him and told Mr. Haertel he was in 'over his head' and that 'he would [expletive deleted] fail,' " (brackets in complaint). Finally, Brew City's complaint alleges that at several meetings defendants asked whether Haertel had "suffered enough," and concluded by stating that Haertel had not suffered enough. These alleged actions belittle and disparage Haertel's abilities. They all concern harms to Brew City's reputation and business, and do not concern the transfer of property or money under the assignment agreement.

¶ 30. In contrast, the breach of contract claims allege that Wispark failed to convey the title to buildings 27, 28, and 35 in a timely manner, failed to draft reasonable covenants, failed to provide Brew City with remediation money, and delayed payment of Haertel's salary. These allegations all concern the transfer of

property or money under the assignment agreement, and do not concern harm to Brew City's reputation and business.

¶ 31. The third reason that the economic loss doctrine does not apply here is that the damages Brew City seeks under its § 134.01 claim are distinct from the damages it seeks under its breach of contract claims. Ferchill Group argues that the allegations supporting Brew City's § 134.01 claim are part of the assignment agreement on the grounds that the damages Brew City seeks are (a) economic damages and (b) identical to the damages it seeks for its breach of contract claims. This argument is mistaken.

¶ 32. That Brew City seeks financial recovery is not tantamount to its losses being economic losses for the purposes of the economic loss doctrine. "An injury is not 'economic' simply because it is monetary. All losses —even those stemming from injuries to the person or damage to property—are monetary in nature, i.e., 'they destroy values which can be and are monetized.' " *Rich Prods. Corp. v. Kemutec, Inc.,* 66 F. Supp. 2d 937, 968 (E.D. Wis. 1999); quoting *Miller v. U.S. Steel Corp.,* 902 F.2d 573, 574 (7th Cir. 1990). Malicious injury to one's business is more akin to injury to person or injury to property, which need not be economic losses for the purposes of the economic loss doctrine, despite often being compensated financially. *Daanen & Janssen, Inc. v. Cedarapids, Inc.,* 216 Wis. 2d 395, 402, 573 N.W.2d 842 (1998).

¶ 33. Ferchill Group argues that the damages Brew City alleges show that its § 134.01 claims are really contract claims, artfully pled. It observes that in its statement of damages for the § 134.01 claims, Brew City refers to the same paragraph that sets out the

injuries and damages for the alleged breach of contract.[8] Thus, Ferchill argues, Brew City has only a contract claim, pled different ways.

¶ 34. This argument is unpersuasive. Brew City's claim for relief under § 134.01 states that Brew City "sustained financial and other injuries, including those injuries set forth above [under breach of contract]." This cannot be read to indicate that the only damages Brew City suffered arose out of the alleged breach of contract. Further, the paragraph alleging damages from breach of contract includes damage "to Brew City's business and reputation." Because such damages are properly pled in tort, not contract, they may serve as the basis for tort liability.

¶ 35. In sum, malicious injury to reputation and business claims do not require the existence of a contract in order to lie. The allegations upon which Brew City bases its § 134.01 claim and the damages it seeks are different from the allegations and damages found in its breach of contract claims. We therefore determine that the economic loss doctrine does not apply in this case and thus does not bar recovery for Brew City's § 134.01 claim.

¶ 36. Note that our conclusion is not based on a malevolent action exception to the economic loss doctrine. While we agree with the court of appeals that the

_____

[8] With regard to damages, Brew City's complaint alleges that "[a]s a result of defendants' malicious and intentional injury to Brew City's reputation and business, Brew City has sustained financial and other injuries, including those injuries set forth above in paragraph 90." Paragraph 90 states that Wispark's breach of contract caused damages to Brew City, including loss of time, money, business, profits, and "damage to Brew City's business and reputation."

economic loss doctrine does not bar Brew City's claims under § 134.01, we do not agree with its conclusion that a malevolent action exception to the economic loss doctrine is implicated. If such an exception were to exist, it would require a case in which the economic loss doctrine applies in the first instance. Rather, we determine that the economic loss doctrine does not apply in the case of an independent tort based on allegations distinct from any contract allegations, and which seeks separate, non-economic damages.

## IV

¶ 37. We consider next Brew City's claims that Franke, Ferchill, and JTMK-Pabst intentionally interfered (claim three), and conspired to intentionally interfere (claim seven), with Brew City's June 5, 2002, assignment agreement with Wispark.[9] Ferchill Group argues that Franke and Ferchill are immune from claims of tortious interference with contract by virtue of being members or managers of LLCs. It asserts that because Franke and Ferchill are not "independent from the legal entity with authority to perform under the contract," they cannot be held liable to third parties in tort for their conduct as members or managers of LLCs under Wis. Stat. § 183.0304.

---

[9] As noted by the court of appeals, the claim for conspiracy to intentionally interfere with contract (claim seven) is essentially a "recasting" of claim three. *Brew City,* 289 Wis. 2d 795, ¶ 20.

The elements of a claim for intentional interference with a contract are "(1) the plaintiff had a contract or prospective contractual relationship with a third party; (2) the defendant interfered with the relationship; (3) the interference was intentional; (4) a causal connection exists between the interference and the damages; and (5) the defendant was not justified or privileged to interfere." *Aon Risk Servs., Inc. v. Liebenstein,* 2006 WI App 4, ¶ 20, 289 Wis. 2d 127, 710 N.W.2d 175.

¶ 38. The court of appeals modified the dismissals of the tortious interference claims from dismissals with prejudice to dismissals without prejudice and allowed for the repleading of the claims. Ferchill Group requests that this court "reverse the Court of Appeals' 'modification' of the dismissal of the tortious interference claims." We decline to do so. Ferchill Group's argument misses the mark because it fails to appreciate that at the motion to dismiss stage of the proceeding all of the allegations of the pleadings are taken as true.

¶ 39. Ferchill Group relies on Wis. Stat. § 183.0304 in support of its argument. That statute provides:

> **Liability of members to 3rd parties.** (1) The debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the limited liability company. Except as provided in ss. 183.0502 and 183.0608, a member or manager of a limited liability company is not personally liable for any debt, obligation or liability of the limited liability company, except that a member or manager may become personally liable by his or her acts or conduct other than as a member or manager.

Section 183.0304 does not provide the Ferchill Group with the protection it seeks. It overlooks the last clause of the statute: "except that a member or manager may become personally liable by his or her acts or conduct other than as a member or manager."

¶ 40. The court of appeals correctly notes that Brew City's complaint does not allege that Franke or Ferchill were members or managers of Juneau, and it does not allege that they acted on behalf of Juneau.[10]

---

[10] Franke is the president of Wispark, and Wispark is party to the June 5, 2002, assignment contract. To the extent that

*Brew City,* 289 Wis. 2d 795, ¶ 13. Moreover, to the extent that Juneau has legal responsibility for conduct alleged in Brew City's complaint, as an LLC only its members and managers have any immunity.

¶ 41. The express language of Wis. Stat. § 183.0304 is clear that it preserves the liability of a member of an LLC for conduct "other than as a member or manager."[11] Thus, were it to turn out that Franke and Ferchill are members or managers of Juneau, they may still be liable for tortious interference with contract if they conducted such interference other than as members or managers of Juneau. Indeed, Brew City's third cause of action alleges that they were acting "individually"; we understand "individually" to mean "not as a member or manager of another entity."

¶ 42. Ferchill Group also asserts that Brew City's tortious interference claims should be barred because

---

Franke's actions are performed as a member or manager of Wispark, he will be not be liable individually for interference with that contract under § 183.0304.

[11] In addition, under Wis. Stat. § 183.0402, certain types of conduct are beyond the scope of the duties of managers and members of an LLC. Section 183.0402 provides in relevant part:

> **Duties of managers and members.** Unless otherwise provided in an operating agreement:
>
> (1) No member or manager shall act or fail to act in a manner that constitutes any of the following:
>
> . . . .
>
> (b) A violation of criminal law, unless the member or manager had reasonable cause to believe that the person's conduct was lawful or no reasonable cause to believe that the conduct was unlawful.
>
> (c) A transaction from which the member or manager derived an improper personal profit.
>
> (d) Willful misconduct.

Brew City does not allege that Franke and Ferchill "acted with an improper personal motive or otherwise inconsistent with the interests of Wispark and Juneau." This presupposes that there was a unity of interests in the first place. However, Brew City does not allege unity of interest. Rather, as already noted, Brew City's tortious interference claims are alleged against Franke and Ferchill "individually."

¶ 43. The court of appeals did, however, affirm the dismissals of the tortious interference claims, but modified the dismissals to be dismissals without prejudice, and allowed that Brew City could replead its claims. It affirmed the dismissals not on the basis of immunity, but because Brew City had not pled a sufficient nexus between Franke and Ferchill's malicious conduct and the tortious interference with the contract:

> [A]lthough Brew City's complaint alleges what on the surface appears to be rough treatment of Haertel, none of the allegations are tied directly, or even by reasonable inference, to the mechanisms (that is, what Franke and Ferchill did to interfere with Brew City's June 5th assignment contract with Wispark) that resulted in the grievances asserted in the Third Claim.

*Brew City,* 289 Wis. 2d 75, ¶ 13.[12]

¶ 44. We agree with the court of appeals that the dismissals of the tortious interference and conspiracy to

[12] The court of appeals also determined that because Brew City's complaint alleges that JTMK-Pabst is a member of Juneau, yet alleges no conduct by JTMK-Pabst other than as a member of Juneau, it was not a proper party to Brew City's tortious interference claims (claims three and seven). It affirmed the circuit court's dismissals, though modified them to be without prejudice if facts were to develop showing that it

tortiously interfere claims should be without prejudice and that the claims may be repled. Under Wis. Stat. § 802.09, leave to amend a complaint "shall be freely given at any stage of the action when justice so requires." Ferchill Group has offered no persuasive argument why leave should not be freely given here.

¶ 45. In sum, we agree with the court of appeals that based on the allegations in the complaint, Ferchill Group's argument that Franke and Ferchill are immune must fail. The complaint provides no allegation that they are members or managers of Juneau, and the allegation that Franke and Ferchill acted individually indicates that they acted other than as members or managers of another entity. Accordingly, we determine that Franke and Ferchill are not immune from liability for claims of intentional interference with contract and conspiracy to intentionally interfere with contract under Wis. Stat. § 183.0304.

## V

¶ 46. Ferchill Group argues next that the intracorporate conspiracy doctrine set out in *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984), prevents recovery from the defendants for Brew City's conspiracy claims (six and seven) because they are members, officers, or affiliates of Juneau.[13] We disagree

acted other than as a member of Juneau. Neither Ferchill Group nor Brew City seeks review of this aspect of the court of appeals' decision.

[13] The conspiracy causes of action are claim six (conspiracy to maliciously injure reputation and business under Wis. Stat. § 134.01) and claim seven (conspiracy to intentionally interfere

on the ground that there is nothing in Brew City's complaint that demands the conclusion that the defendants had the unity of interests required for the intracorporate conspiracy doctrine to apply.

¶ 47. The intracorporate conspiracy doctrine as outlined in *Copperweld* is based on a unity of interests between a parent company and a wholly-owned subsidiary. *Copperweld* involved a lawsuit for conspiracy to violate the Sherman Antitrust Act, 15 U.S.C. § 1 (2000), against a company and its wholly owned subsidiary. The Supreme Court held that because of the complete unity of interests between a parent corporation and its wholly-owned subsidiary, they cannot conspire together for the purposes of antitrust law. The Court articulated that unity of interests as follows:

> A parent and its wholly owned subsidiary have a complete unity of interest. The objectives are common, not disparate; their general corporate actions are guided or determined not by two separate corporate consciousnesses, but one. . . . With or without a formal "agreement," the subsidiary acts for the benefit of the parent, its sole shareholder. . . .
>
> [T]he very notion of an "agreement" in Sherman Act terms between a parent and a wholly owned subsidiary

---

with contract). As noted above, the court of appeals reversed the dismissal of Brew City's § 134.01 claim with respect to all defendants "except insofar as it asserts claims against Highland Best and JTMK-Pabst for acts done as members or managers of Juneau." *Brew City,* 289 Wis. 2d 795, ¶ 19. The court of appeals allowed repleading of claim seven with respect to Franke and Ferchill. Because the complaint alleges that JTMK-Pabst is a member of Juneau, the court of appeals allowed repleading of claim seven with respect to JTMK-Pabst only "if facts develop that show any conduct by it other than as a member of Juneau." *Id.,* ¶ 13.

lacks meaning. A § 1 agreement may be found when "the conspirator had a unity of purpose or a common design and understanding or a meeting of minds in an unlawful arrangement." But in reality a parent and a wholly owned subsidiary *always* have a "unity of purpose or a common design." They share a common purpose whether or not the parent keeps a tight rein over the subsidiary; the parent may assert full control at any moment if the subsidiary fails to act in the parent's best interests.

*Id.* at 771–72 (emphasis in original, internal citations omitted).

¶ 48. Ferchill Group cites two Wisconsin cases in support of its view that the intracorporate conspiracy doctrine bars Brew City's claims for conspiracy to intentionally interfere with contract and conspiracy to maliciously injure reputation and business. The cases demonstrate the unity of interests present in *Copperweld,* but they are distinct from the facts alleged here. In *Ford Motor Co. v. Lyons,* 137 Wis. 2d 397, 405 N.W.2d 354 (Ct.App. 1987), the defendants were a parent corporation and its wholly owned subsidiary. In its determination that the defendants were unable to conspire under Wis. Stat. § 134.01, the court of appeals emphasized that, as in *Copperweld,* the defendants had a complete unity of interests, and that the parent company had the ability to exercise complete control over the subsidiary. *Id.* at 427–28.

¶ 49. The second Wisconsin case Ferchill Group relies on is *Wausau Medical Center, S.C. v. Asplund,* 182 Wis. 2d 274, 514 N.W.2d 34 (Ct.App. 1994). In that case, the court of appeals determined that a physician and the personal service corporation that was the physician's "alter ego" could not conspire together under § 134.01. *Id.* at 296.

¶ 50. These cases do not support Ferchill Group's argument that the intracorporate conspiracy doctrine bars Brew City's conspiracy claims (claims six and seven). There is nothing from facts alleged in Brew City's complaint that suggests that there is the complete unity of interests among the defendants of the sort in *Copperweld* and *Ford Motor Co.* Further, the array of entities against whom Brew City has alleged conspiracy goes far beyond the single physician and his alter ego in *Wausau Medical*.[14] We therefore cannot conclude based on the allegations in the complaint that the intracorporate conspiracy doctrine outlined in *Copperweld* bars Brew City's conspiracy claims.

## VI

¶ 51. In conclusion, we determine first that the economic loss doctrine does not apply to Brew City's malicious injury to business claim. Second, under the facts alleged in Brew City's complaint, Franke and Ferchill are not immune from liability under Wis. Stat. § 183.0304. Third, the intracorporate conspiracy doctrine does not bar Brew City's claims, as alleged, for conspiracy to maliciously injure business under

---

[14] Ferchill Group also cites to *Fraser v. Major League Soccer, LLC,* 97 F. Supp. 2d 130 (D. Mass. 2000) for the proposition that "there is little reason to treat an LLC ... differently from a corporation." *Id.* at 135. However, *Fraser* is inapt. In the appeal to that case the First Circuit declined to extend *Copperweld* to preclude liability for the LLC. *Fraser v. Major League Soccer, LLC,* 284 F.3d 47, 59 (1st Cir. 2002), *cert. denied,* 537 U.S. 885. Rather, it determined that Major League Soccer, LLC, should *not* be treated as a single entity based on the "diversity of entrepreneurial interests" of its members and the fact that its members "are not mere servants of MLS; effectively, they control it . . . ." *Id.* at 57.

631

Wis. Stat. § 134.01 and for conspiracy to tortiously interfere with contract. Although we apply a different rationale with respect to Brew City's § 134.01 claims, we affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 52. Justice JON P. WILCOX took no part.